Appellant. Mr. Lattimore for the Appellant. Mr. Card for the Appellee. May it please the Court. Good morning. Good morning. My name is Ryan Lattimore. I represent the Appellate Defendant, Kerry Newman, on appeal from the District Court. Based upon his denial of a writ of error of quorum nobis by that court, we're arguing that the District Court abused its discretion when it failed to find ineffective assistance of counsel, which had also prejudiced the appellant, and therefore a fundamental error justifying quorum nobis relief. We're arguing specifically that former counsel was ineffective based upon his violation of his duty to mitigate harm under the plea agreement under Glover v. United States 531 U.S. 198-2001, and ineffective due to a deficient plea bargain under a duty to negotiate an effective plea bargain under Lafleur v. Cooper, U.S. Go ahead. Somebody was about to say something I thought. I don't understand how you can have a duty to negotiate an effective plea bargain. I'm sorry, Your Honor. I don't understand how you can have a duty to negotiate an effective plea bargain. We're arguing that under the Sixth Amendment, counsel after Lafleur v. Cooper does have a duty to negotiate an effective plea bargain. How can you have a duty to do something you may not be able to do? Well, I believe it is within the scope of counsel under the Sixth Amendment to... You can bargain, but you cannot guarantee your client that you're going to get him what he's going to consider an effective plea bargain. That's correct. That's correct, Your Honor. I've been on both sides of those bargains a long time, before I came on this court for a long time. But like any other negotiation, you can't have a duty based on what the result has to be. That just doesn't make sense. Well, in this specific situation, there was something that was very important to the appellant, which was not considered at all. So at least there would be a duty to take that into consideration when negotiating the plea. Wasn't he told in open court by the judge that he might be deported and excluded based on the plea? He was told by the judge that he might face deportation based upon his plea agreement. That is correct. Right. Thank you. Let me go back to your argument about prejudice and ask you this. Given the Supreme Court's decision in Chated, you can't rely on counsel's failure to advise, right? You can only... Isn't that right? I'm sorry, Your Honor. Can you repeat that? Given the Supreme Court's decisions, you can't, since this is post-pedia, you can't rely on counsel's failure to advise about the immigration consequences of pleading guilty, right? That is correct. So, go ahead, finish your sentence. I was just going to say you cannot rely on counsel's failure to advise. Correct. You can only rely on counsel's inaccurate advice at the plea, at the sentencing, right? Isn't that right? Are you talking about our case specifically, Your Honor? Yeah, your case. He inaccurately advised Mr. Newman at sentencing. There's no question about that. Okay. So then, isn't the prejudice question we have to ask is what would have happened had counsel remained silent? In other words, not said anything. Are you talking about at the plea? Yeah. No, at the sentencing. Yeah. In other words, if counsel, instead of saying, giving bad advice, had remained silent, the question then is, okay, let's assume he did. What's the prejudice here? Okay. Your argument is, well, he might have gone to trial, correct? I think our better argument is that he would have sought to negotiate a different plea agreement. What evidence in the record is there of that? How do we know? What could we see in the record? What's your best evidence that he would have negotiated a different plea? Sure. His substantial assistance to the government, prosecuting numerous other individuals over a long period of time, which was mentioned in the sentencing transcript, and I don't remember if it was a probation officer or someone else involved with the prosecution spoke on his behalf to his extraordinary efforts in helping prosecute others. So, I mean, that would be factual evidence that there would be a possibility that he could leverage that into some sort of alternate plea. I've seen it happen. Even though, as Judge Santel said, he pled knowing, accepted it knowing that the judge could have sentenced him, even under the bad advice, to a sentence that would have had immigration consequences. In other words, he accepted that risk. At what stage, Your Honor? At the sentencing. I don't understand the question, sir. You say he could have withdrawn his plea, right? Or he negotiated a different? I was using the evidence of his extensive cooperation to make an argument that, so at that point, I guess, in reality, yes, the former plea would have had to be vacated and he would have had to negotiate a new plea. Or he could have never entered the plea in the first place, cooperated, and He never entered the plea in the first place, though. Is there anything in the record that indicates that he would have gotten a negotiated plea as opposed to having to go to trial and probably getting a good deal worse than he got? Is there anything in the record? Anything in the record that says that if he had succeeded in withdrawing that plea or refusing to enter that negotiated plea, that he could have gotten another negotiated plea. I mean, very often, it doesn't happen very often that a defendant does back out of a plea, but usually when he does, it goes to trial. And then he gets convicted, most likely. And then he gets worse than he got in this deal. So why should we assume that this is going to be contra norm and have a different result than what happened in most cases? Because taking the facts of the case from the sentencing and how important getting a plea and sentence was to him that would protect him. It was so important that he did enter this plea and did stand by it, even with the judge advising him that he might be deported. It was so important, yet he did exactly what he did.  He was relying on his counsel to negotiate an effective plea agreement that was going to protect the things that counsel knew was important to him, knowing that he was not a citizen of the United States. He went to court and the judge told him in open court on the record, you may be deported, his attorney and the prosecuting attorney all there, all singing amen to the good. How can you possibly say that this was so important to him that he would have backed out of the plea if he had gotten different advice? Because the counsel at the time relied on the sentence as the prime factor as to whether any immigration or deportation consequences were going to attach to the criminal conviction. That was an incorrect assumption and incorrect advice if he would have affirmatively given that advice. That takes you back to what Judge Tatel was asking you about, about the difference between bad advice and silence. If you'd been silent, you wouldn't have anything at all, would you? We know that former counsel was silent to a certain point. What we're arguing is that former counsel still had a duty to negotiate an effective plea, and part of negotiating an effective plea when the most important thing to your client is remaining in the United States with their mother, father, kid, four brothers, three sisters, is to enter into a plea and eventually be sentenced to something that at least they'll have a defense in immigration court to. Unfortunately, former counsel... ...in which there has been a plea that has accomplished what you're asking for here. From my position or vacating... If you know of, period. I've had a case where an individual pled guilty, assisted the government, the conviction was vacated, and he pled to a crime that was not going to have immigration consequences, and he had faced no immigration consequences and became a citizen two or three weeks ago. So I know it's possible. Can I ask you something separate? You filed for a writ of quorum nobis. If that writ were granted, what would happen? The plea would be vacated, and it would be up... I'm sorry, the conviction would be vacated. The conviction would be vacated, and it would be up to... He's not in the country anymore. He's in Jamaica. So how on earth can that give him any... If what he wants is relief from the deportation, and he's already been deported, this writ has no ability to give him any meaningful relief whatsoever. I don't understand that. If the conviction is vacated, we can seek to reopen the immigration court case before the immigration court in Arlington based upon a conviction that's vacated on a procedural or substantive defect, not just for immigration purposes, and he would be able to come back in the country and go before the immigration judge again and be prosecuted if he... I'm assuming the U.S. Attorney's Office wouldn't just drop the case. He's going to be... You have to show somehow that this is going to give you relief. And if they're going to prosecute you and your client would be convicted again, then he's going to be in the exact same boat that he is now. And even if you were to negotiate a plea that wouldn't have immigration consequences, I'm not sure what it would be for this offense. For something like this? But you still can't... This writ does nothing to bring him back into the country. This is a civil case, not a criminal case. The writ of quorum noves for these purposes, right? He's done with his sentence. That's correct. Vacating the conviction does nothing to bring him back into this country. We can't order that he be brought back into this country. That's a separate administrative process that is 100% available to him if he has no longer been convicted of this crime. There's no question about that. Right, but would the immigration people have to ignore all the behavior that he admitted to and cooperated with? The fact that he engaged in the behavior that warranted deportation is undisputed. Okay, very good question. So the behavior that he engaged in would probably form the basis for a ground of inadmissibility and a waiver admitting to the essential elements of a crime involving voluntary gratitude, and a waiver is available through immigration for that ground of inadmissibility, whereas there is no waiver or defense available based upon his aggravated felony conviction back then. Some things have changed in various courts of appeals where today he might even be able to apply for a waiver depending on how he entered the country and the jurisdiction. Has he tried to apply? If you can have a waiver of this concern about the conviction or engaging in the conduct, conviction or not, has he tried that already? No. So the process, the conviction would have to be vacated, and then that would allow him to go back to immigration at that point, and he would have to go through the immigration process. Only at that point would he be able to apply for relief, affirmative relief, apply for a waiver, or whatever else would be available to him at that point. So the conviction as an individual deported after being convicted of an aggravated felony, he's barred for life from returning to the United States, he faces criminal prosecution if he did return to the United States, and there is no waiver available to him in that position from an immigration standpoint. And given that the crime in which he engaged was fraud just by definition, so any way you look at it, it's a crime of moral turpitude. That's correct. Is there any basis for thinking that there is something that you could plead to that wouldn't involve fraud? Were there other counts or other discussions on the table?  I was going to suggest 18 U.S.C. section 1001, simple misstatement to a federal official. That's something I've used in the past where different, once again, based on the Court of Appeals precedent in different areas, that may not be considered an aggravated felony. It may not be considered a crime involving moral turpitude either, depending on the jurisdiction. So that's something specifically that I've used in the past. Do we have law on whether 1001 violation is a crime of moral turpitude? Do we have circuit law on that? To be quite honest with you, Your Honor, I don't know that off the top of my head. If we do, then you couldn't get the waiver anyway if you pleaded 1001. As long as it's not an aggravated felony, as long as it's a crime involving moral turpitude, there is a waiver available for that. So you have to get rid of the aggravated felony aspect. Exactly. Yeah, exactly. I mean, that is him being deported after being convicted of an aggravated felony is the issue. If that aggravated felony conviction no longer exists and the conviction was vacated based upon, in this case, a procedural defect or substance defect, but not just for immigration purposes, then immigration no longer recognizes that as a conviction. So he has no longer been convicted of an aggravated felony and then deported. It sort of rewinds. At that point, it does get very complicated getting him back into the country. You have to work with ICE and CBP, but it's been done before. I mean, it's not like a pipe dream. It's been done before even when there is, as a matter of public record, a colloquy in which he admits to engaging in crimes of moral turpitude. I mean, that's just a matter of public record that's out there what he admitted to. That's correct. So that falls under a separate ground of inadmissibility, which is admitting the essential elements of a crime involving moral turpitude. It's no longer an aggravated felony, and it's no longer a conviction for immigration purposes. So all of those modifiers change your position based upon whether— He also will have admitted in open court to an aggravated felony, even if he's not convicted of it, right? That's fine as long as it was vacated. Okay, thank you. We'll hear from the government. May it please the Court, Stephen Ricard on behalf of the United States. There was no abusive discretion in Judge Friedman's order denying the petition for the extraordinary writ of quorum nobis. Appellant has failed to meet his burden of showing an air of the most fundamental character that's tantamount to a miscarriage of justice. He's not even shown ineffective assistance of counsel. But you only argue prejudice here, right? Your brief focus is completely on prejudice. I don't think that's quite—I don't quite agree. I think that we break it up, just as Your Honor broke it up in your questions to Appellant's counsel, about the two different alleged acts or omissions. And the first alleged omission is the alleged failure to provide any information prior to the plea. And I think our brief says that that can't be deficient performance because Padilla's not retroactive. Well, wait, but you—I'm sorry, go ahead. What about his—the inaccurate advice he gave later? I mean, that's—I didn't see you arguing that that wasn't a basis for ineffective assistance charge. You argue there's no prejudice. That's correct as to the second act. I do want to make one factual clarification. I was right. On the only issue that he could raise here, post-Padilla and whatever that other case is— Kaidez. Thank you. Kaidez or Kaidez. The only issue he could raise here, namely, that he was—that the advice was inaccurate, the government's argument is there's no prejudice, correct? That's correct. I wasn't sure you agreed that that was the only argument he could raise, so I wanted to make sure I addressed both of them. I understand. That's fine. Okay. Now we've got that. Okay. Now, do you agree with me that one of the—on that—at that point, the district—on that issue, the district court said there was no prejudice because he had already pled guilty? That's correct. But that's wrong, right? No, Your Honor. Because he could have withdrawn his plea. He doesn't have a right to withdraw his plea. But he can withdraw it for any fair and just reason. I think that he would have to have some showing. There's a multi-pronged test that has to go with it. But then how can there be—how can it be—I mean, maybe—maybe you have an argument that even if there wasn't inaccurate advice, there's no prejudice, but it can't be that there's no prejudice because he pled guilty. That's not right. Because he does have a right to withdraw, under certain circumstances, the plea, correct? Where there's a timely request to withdraw an error in Rule 11 colloquially and an assertion of innocence. Yeah. And there's none of those here. Of course there isn't. But the question we have to ask is, assuming at the sentencing the counsel had not said anything, as opposed to giving false advice, right? Was there—is there prejudice? And the district court said no because he pled guilty. But we just don't know, do we? I think that the record shows that given that he was warned at the plea hearing and that his affidavit establishes that he was given no advice at the plea hearing and that he went forward with his plea, that the record strongly supports that he would not— Okay, that's your argument about no prejudice. That I got. Okay. And I just—I'm not quarreling with deficient performance since we are focusing on prejudice, but because we keep calling it false advice at sentencing, I did just want to note in reading the sentencing transcript, the language used does not amount to assurance that there would be no ICE consequences. It says both the prosecutor and the defense attorney said words to the effect that if the sentence was greater than the year and the day, there could be increased ICE attention or it could draw it to a higher level with ICE. So I don't think there was ever an assurance that he would not be deported as counsel has characterized it. We agree that the actual sentence imposed does not matter in terms of making him an aggravated felon. So there was some element of incorrectness there. But I think to call it an assurance at sentencing is not an accurate— You're downplaying this a lot. I mean, the prosecutor was there saying this is going to make a difference, whether it's more or less than a year. This is going to make a material difference. And then the defense attorney repeated that to his client. And the court jumped on the bandwagon as well. I think you're downplaying significantly what the impact of that would have been on Mr. Newman standing there and deciding whether to go forward with this plea. Well, he's not deciding whether to go forward with this plea, and that's my prejudice. It's at sentencing. No, no, he could have. If his attorney had turned to him and said, I totally messed up. In fact, this plea, whatever the sentence, the U.S. attorney's wrong, whatever the sentence, you are in immigration hot water right now. You are at real risk right now based on the plea, but it's not too late. You can ask the court to withdraw the plea before sentence is imposed. The rules allow that. How do we know that Mr. Newman wouldn't have said, heck, yes, let's get out of this plea and let's negotiate something that will keep me in the country with my family? That's our prejudice question. I'll go back to the answer I gave before I went down the other path, which is that we know that from the plea proceeding, where he was, in fact, advised of the potential for immigration consequences and where his affidavit. No, but his attorney may have already told him it's all going to turn on the sentence. No, on the record that we have in his affidavit at page two to three, he says that when the judge warned him, quote, this was the first time this was ever brought to my attention, and even then my attorney did not advise me to change my plea offer or offer any advice regarding my immigration status. So even his affidavit, which I think is what the judge proceeded on without a hearing below, makes clear that he was not given any advice. But why does it matter? Because as long as he received affirmative misrepresentations before he entered his plea, once he got the bad advice, right, there's a distinct material difference in attorney misconduct or attorney deficiency in making affirmatively wrongful misrepresentations about immigration conduct. And if he does it before he has a chance to change his mind, I just don't know how we know that he wouldn't have changed his mind had he gotten truthful advice rather than bad advice, wrong advice. Because at the point of the plea, he had been told that there may be immigration consequences by the judge, according to his own affidavit. Maybe, I'm not sure, I don't know, I'm just raising that as a question. According to his own affidavit, his attorney had given him more advice at that point, and he proceeded with his plea. And the plea was in his best interest and remains, you know, a plea that reduced it. Well, that's your opinion that it's his best interest. I think we're hearing from Mr. Newman that he'd rather, if he'd have known, that he would have done a whole different thing. Maybe he would have just said, fine, I'm just going to have to go to trial. I cannot walk into something that takes me away from my family. How do we know what the outcome would have been? Well, he has the burden, and Padilla itself makes clear that he has to show not only that he would have withdrawn his plea, but that withdrawing his plea, or that he would not have fled, but that doing so would be a rational choice. Wait, where does he have to show it would be a rational choice? Padilla says that. That's part of showing prejudice, is showing that he would not have taken his plea, and part of showing that, which this Court's own precedent has not recognized before, is also evaluating the evidence against him and whether such a decision would have been rational. I almost hate to ask this, but what makes a felony an aggravated felony? Why is 1001 not an aggravated felony and this is an aggravated felony? I think there's about 15 different subparts. Appellant's counsel could probably be more well-versed in it than I. One of the subparts is a fraud where the loss is in excess of $10,000, and that brings me, I think, to a point Your Honor, Judge Millett's questions suggest about what the government would do and what the government's interests are here. There's another collateral, or not collateral, but direct consequence of Appellant's plea, which is that he has to give back the $224,000 that he defrauded from the housing and urban development, and that's a requirement that was imposed on him and restitution was ordered as a result of his plea. I don't think that that's something the government would bargain away, given that it's $224,000 of the government's money. I'm not sure what that's got to do with... It puts it above the $10,000 threshold for fraud, so I don't think there's any chance that we would agree to a fraud less than $10,000. You know, listening to this argument makes me wonder why we shouldn't do what we normally do in a direct appeal, and since one way to look at this is, since the record doesn't conclusively show one way or the other, doesn't conclusively answer the question one way or the other about prejudice, we should just send it back to the district court. I mean, after all, he, the district judge here, first of all, he denied the motion reluctantly. That's what he said. And he observed all of this, and he's in a far better position than we are to decide to make the prejudice judgment, and if the district judge knew that he couldn't hold that there was no prejudice simply because the defendant had pled, he might well look at the record differently. So why shouldn't we just send it back to him? There was no error in his ruling that there was no prejudice because at the moment of sentencing, even assuming misadvice at the moment of sentencing, that that influences decision to plea. He made a decision to plea that was entirely consistent. But you're resisting my question. I'm saying if I'm uncertain about that, if there's any, if it's not conclusive, that's the standard we use in a direct appeal, and that's also the habeas standard. I don't know what it is for Quorum notice. I assume it's the same as habeas. If it isn't conclusive one way or the other, why not just let the district judge who saw all this make an independent judgment of our prejudice? Isn't that the best way to resolve this, particularly since, as I said, he denied it reluctantly? He denied it reluctantly but found that there was no charge of prejudice. But he found there was no prejudice based on a statement that he had already pled guilty, and that's not accurate. I disagree with that characterization. Okay, suppose you're wrong about that. Suppose you're not right. Suppose we think that that was not a proper basis for finding no prejudice. Then would you agree that we should remand this to the district court? No. Appellant had the burden of showing prejudice to get the extraordinary petition. The argument that Your Honor has advanced that he could have filed a Rule 32 motion to withdraw the plea isn't one he made below or on appeal, and he can't get the showing for that relief. He couldn't have at the time of sentencing, and he can't now. Do you have a hand? No. No? Okay, thank you. Did counsel tease up all the time? Okay, you can take two minutes if you would like it. What do you think about this idea of sending it back to the district court? Sounds good to me. I thought you'd get his vote. Sir, did you have a question that you wanted to? Yeah. Why would 1001 not be treated as a crime of moral turpitude under the record of this case? Because in many jurisdictions, a simple false statement has been found not to be a crime involving moral turpitude. And a crime involving moral turpitude is a very fluid thing that's always changing based upon Board of Immigration Appeals precedent, U.S. Court of Appeals precedent. And we have no precedent on 1001 as to that, right? I can't answer that one way, Your Honor. One way or the other, Your Honor, I apologize. We really can't know whether this would be treated as a crime of moral turpitude even if he changed the 1001 plea. Well, that was my point earlier was that if it is treated as a crime involving moral turpitude, if the aggravated felony conviction is vacated and that it would no longer be recognized for immigration purposes at that point. So if he does plead guilty to a crime involving moral turpitude, not an aggravated felony, he would have immigration relief available to him at that point, no question. So it doesn't matter if it's a crime involving moral turpitude or not. That would help us immensely. When he got stopped coming back into the country and taken into custody, if it just would have been a crime involving moral turpitude, he would have gone before Judge Bryant in Arlington and presented multiple defenses if he wanted to to deportation. And he would have at least had a chance at that point. But the aggravated felony at that time foreclosed all options completely. What about the government's point that they were going to get this large six-figure restitution out of him no matter what, and that that would have necessarily required that the plea be to something that's an aggravated felony level? I assume, can you construct a plea bargain where you plead to 18 U.S.C. 1001 and also just agree, just happen to agree to pay 200K in restitution? Well, I mean, it would have to, if he's going to plead to a fraud crime, which I'm not saying 1001 is, if the only plea available to him was a fraud crime, then the loss amount couldn't be over $10,000. It would still be an aggravated felony. So you're going to have to get him any meaningful relief in the end. We would first have to hold that there was, meet all the elements for this extraordinary relief. Then you're going to have to go through a negotiation with the United States, try to get a plea to a better deal than you had the first time, when nothing's changed in the cards they've got in their hands. Then you've got to get away with it. I mean, even if you get all that, you've got no guarantee that he gets the relief from immigration. He can enter the country as soon as the plea is vacated. You're going to have to stay until what happens. This case doesn't go away when he enters the country. That's correct. The United States has a case in which it's had a conviction. It has a judgment it likes. You're going to have to come in and try to negotiate them for a better deal. No guarantee you're going to get a better deal. Even if you get the better deal, you may or may not be able to get a waiver from immigration. It is in a different position because 12 years has passed. They want to take that to trial after, or maybe more than that. Somewhere in that range has passed. They want to take it to trial after that? I don't know. Well, you've got his admissions. That helps your case an awful lot. Five years down the road, you've still got his under oath admission that he committed the crime. I understand that. What I'm saying is that if the conviction is vacated, that gives him his options back. He can try to come back if he wants to. He can not try to come back if he wants to. He can try and negotiate some sort of better plea from Jamaica. He can come back and try and do it from here. This is an important point. If he does come back and is convicted of an aggravated felony, so the conviction is vacated. He's out of the country. He comes back. The only thing he can plead to is an aggravated felony. As I said before, the law is different regarding aggravated felonies now than it was back then. There was absolutely no relief back then. Now, somewhere along the lines of seven circuits have found that a lawful permanent resident convicted of an aggravated felony can apply for a waiver under certain circumstances. But if he comes back in, would he come back in as a lawful permanent resident? In the past, that is the way it has happened. All right. Thank you. The case is submitted. Thank you.
judges: Tatel, Millett, Sentelle